UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JOHN WESLEY PILINSKI, SR.           CIVIL ACTION NO. 12-cv-1443

VERSUS           JUDGE HICKS

JERRY GOODWIN, ET AL           MAGISTRATE JUDGE HORNSBY

REPORT AND RECOMMENDATION

**Introduction**

John Wesley Pilinski, Sr. ("Plaintiff") is a self-represented prisoner housed at the David Wade Correctional Center. He filed this action against prison physicians Pamela Hearn and Bruce Fuller, as well as several administrative and supervisory officials, to complain of medical care he received at the prison in 2011 and 2012. Defendants have filed a Motion for Summary Judgment (Doc. 25) that attacks the merits of Plaintiff's claims. Plaintiff has filed a Motion for TRO or Preliminary Injunction (Doc. 23). It is recommended that Plaintiff's motion be denied, that Defendants' motion be granted in part by dismissing all defendants except Dr. Fuller.

**Eighth Amendment; Inmate Medical Care**

For a convicted prisoner to prevail on a claim that his medical care (or lack of care) violated the Constitution, he must prove that prison or jail officials were "deliberately indifferent" to his "serious medical needs." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976); Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc). Deliberate indifference

encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Estelle, 97 S.Ct. at 291-92. Disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

**Plaintiff's Allegations**

Plaintiff's medical records show that he suffered a gunshot wound in 1991. He reported that he was cleaning a .22 caliber weapon when it accidentally discharged into his right thigh, which created a single through and through wound. Plaintiff alleges in his complaint that he never made a full recovery and continues to suffer from substantial pain, muscle cramps, and problems related to the wound. He also alleges that he was shot in the back of the neck in 1993.

Plaintiff arrived at David Wade in March 2011 and soon made sick call due to complaints of chronic and substantial pain and muscle cramps due to the gunshot wound from 10 years earlier. Plaintiff was evaluated by prison physician Dr. Pamela Hearn, but she did not believe Plaintiff's complaints and refused to prescribe the Neurontin, Ultram, or similar medication that Plaintiff said he had been prescribed for many years. Hearn did request medical records from LSU, where Plaintiff had been treated for the gunshot wounds.

Plaintiff made sick call again two months later and was seen by prison physician Dr. Bruce Fuller. Plaintiff complained that he was in substantial pain and suffering muscle cramps, and he needed to stay off of his foot rather than be forced to walk excessively.

Plaintiff alleges that Fuller denied him "adequate medication," did not order limited duty status related to walking and standing, and did not direct that he be provided adequate footwear. Plaintiff alleges that a nurse practitioner later reviewed his records and determined that Plaintiff needed Neurontin, but Plaintiff was denied any medical treatment after a later doctor visit.

Plaintiff then filed an administrative remedy procedure grievance for denial of adequate medication. Relief was denied in a response prepared by Assistant Warden Angie Huff and Medical Director Paula Millwee. The response stated that Dr. Fuller had evaluated Plaintiff in June 2011 for right foot problems and right side pain. He documented Plaintiff's history of a gunshot wound and history of foot drop and numbness. He found no distinct muscle deficits and ordered that Plaintiff have a duty status for limited walk for no more than one-tenth of a mile. The orthopedic clinic was also consulted, and an appointment date was obtained. The grievance response stated that the clinic would give recommendations, and the problem would continue to be appropriately addressed.

Plaintiff alleges that he was sent to E. A. Conway Hospital in Monroe in September 2011 to be evaluated by an orthopedic specialist. Plaintiff contends the doctor prescribed Neurontin, but Dr. Hearn refused to provide the medication and told Plaintiff that the prison did not prescribe Neurontin or any of the other medication Plaintiff said was effective for his condition. Plaintiff alleges that this statement is untrue because other inmates receive such medications.

Plaintiff alleges that he made several more sick calls and was again evaluated by Dr. Fuller in January 2012. Plaintiff requested the medication Mobic and was denied. Dr. Fuller did prescribe Elavil, but Plaintiff complains that it does not help with his condition. Plaintiff was returned to the E. A. Conway Hospital in February 2012, where the same orthopedic specialist allegedly asked Plaintiff how the medication he recommended was helping. Plaintiff alleges that he told the physician that he was being denied the medication and given Elavil instead. Plaintiff states that the orthopedic physician was upset at this news, as well as that Plaintiff was not receiving proper footwear. The physician wrote a prescription to allow family members to send Plaintiff footwear and wrote "please" on the bottom of the prescription. Plaintiff made sick call at David Wade again on February 25, 2012 but did not receive the medication he wanted.

Attached to the complaint is an indication that Plaintiff filed another grievance dated February 27, 2012. Millwee and Huff again responded. They stated that physicians at the prison seek the opinion of outside specialty clinic physicians for consultation purposes and to recommend treatment, but the prison physician is the primary care physician and is controlling in determining healthcare that is provided. All recommendations by the E. A. Conway Hospital consultant were reviewed by prison physicians, and then "appropriate orders [were] given." The response stated that Plaintiff had been examined on multiple occasions by prison physicians and given appropriate medical attention each time. It also noted that Plaintiff had "refused various medications" ordered by the physicians.

Plaintiff alleges that Dr. Fuller later decreased his Elavil and denied a request that Plaintiff's family be allowed to send orthopedic footwear, even though other inmates were allowed that privilege. Plaintiff alleges that he returned to E. A. Conway in April 2012 but, as of May 2012, he had not yet received appropriate medication. He complains of his care at the hands of Drs. Fuller and Hearn, and he complains that prison officials and supervisors did not appropriately respond to his grievances and letters.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

**Analysis**

**A. Dr. Fuller's Evidence**

Defendants responded to the detailed allegations of the complaint with an affidavit from Dr. Fuller that is quite lacking in detail. Fuller testifies that he has reviewed Plaintiff's medical record, personally evaluated and treated Plaintiff, and it is his "professional opinion that the medical treatment provided to [Plaintiff] was necessary and appropriate based upon

the inmate's presentation, medical history, physical examination, and diagnostic tests." He states that Plaintiff's repeated requests "for additional medication and orthopedic shoes are not medically necessary in my medical judgment." He adds that Plaintiff "does not have a serious medical need which requires medical care beyond what is being provided to him by David Wade Correctional Center physicians." Defendants also submit an affidavit from Warden Goodwin who testifies that he is "unaware of any instances where [Plaintiff] was denied medical care" by prison medical staff, and he "defers to the professional medical staff as to the appropriate medical evaluation and treatment of all inmates, including [Plaintiff]."

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

Dr. Fuller's affidavit did not respond to any of the specific allegations against Fuller or Hearn. It would be informative to know, for example, his position on whether or why he and Dr. Hearn declined to prescribe the medication allegedly recommended by an outside specialist, why Plaintiff was not allowed to have his family send special shoes, and the like. Despite the lack of factual detail, the evidence is nonetheless adequate to meet the Defendants' burden under Celotex and obligate Plaintiff to go beyond his allegations in the

complaint and come forward with competent summary judgment evidence to create a genuine dispute of material fact.

**B. Plaintiff's Responses and Evidence**

Plaintiff first responded to the motion with a Declaration in Opposition (Doc. 27) in which he offered legal arguments and referred to the allegations in his complaint. This submission did not, however, include an affidavit or a declaration made pursuant to 28 U.S.C. § 1746 that would constitute competent summary judgment evidence.

Plaintiff later filed an "Affidavit" (Doc. 29) in support of his complaint. Plaintiff complained in that filing about alleged retaliation in 2014, disciplinary measures, administrative confinement, loss of exercise, access to the library, and the like. He also complained of an alleged "high rate of death" at the prison in the last few years, and he discussed certain prisoners who had passed away. All of those facts are outside the scope of the complaint that is at issue in this case, which is concerned only with the medical care Plaintiff received beginning in 2011 and 2012 for his alleged pain related to the gunshot wound. The filing is also not an affidavit because it was not sworn before a notary. Plaintiff stated at the end of the document that he requested a notary and was told to mail it to her, and she would return it. Plaintiff complained that the notary's suggestion was not legal. This filing, given its lack of discussion of the issues at hand, would not give rise to a genuine dispute of material fact even if it were in competent form. And even if a notary were unavailable to properly execute an affidavit, Plaintiff could have submitted a declaration

pursuant to 28 U.S.C. § 1746, as he has shown he is capable of doing in other filings.

Plaintiff later filed a supplemental exhibit (Doc. 38) in support of his opposition. It was a declaration, this time made under penalty of perjury so that it may be considered in a summary judgment contest. Hart v. Hairston, 343 F.3d 762 n. 1 (5th Cir. 2003) (facts sworn to under 28 U.S.C. § 1746 have been recognized as competent summary judgment evidence). Plaintiff responded to Dr. Fuller's affidavit testimony that Plaintiff does not have a serious medical need that requires care beyond what is being provided. He declares that it has "been established by specialists" that Plaintiff does have a diagnosed medical condition. Plaintiff states that he still suffers from chronic pain and sharp, tingling sensations, and numbness. Plaintiff notes that the specialist at E. A. Conway noticed a need for adequate non-narcotic pain medication, but Fuller would not provide it. Plaintiff argues that prison physicians should at least be required to provide a convincing explanation for their choice to disregard the opinion of an outside consultant, rather than merely label the matter as a difference of medical opinion. Plaintiff points out that Dr. Hearn and the other Defendants, other than the Warden, did not submit any summary judgment evidence in support of their positions.

Plaintiff filed yet another declaration (Doc. 40) in opposition to summary judgment. It is also made under penalty of perjury. Plaintiff declared that he made sick call at the request of Warden Goodwin in March 2015, but he was informed by a nurse that Dr. Fuller did not want to see Plaintiff and was not going to give him any medications. Plaintiff had reported to sick call on numerous occasions in 2014 and 2015, but he has still not received

any medication.

### C. Dr. Hearn

Dr. Hearn is not specifically mentioned in the memorandum in support of the motion for summary judgment, which refers generically to the "physicians at the prison," and she did not offer an affidavit. She did, however, join the motion. The court finds that the motion, despite its lack of specific discussion of Dr. Hearn, is adequate to satisfy her summary judgment burden; Dr. Fuller supported the motion with testimony that he had reviewed Plaintiff's "entire medical record" and that it was his opinion that the treatment provided by the prison was necessary and appropriate.

Plaintiff had multiple opportunities to respond with competent summary judgment evidence and create a genuine dispute of fact regarding the care provided by Dr. Hearn. He did not, and he is no longer entitled to rely solely on the allegations in his complaint. Dr. Hearn is entitled to summary judgment dismissing the claims against her.

### D. Dr. Fuller

Dr. Fuller is not entitled to summary judgment. His brief affidavit was sufficient to shift the burden to Plaintiff, but Plaintiff did respond with a declaration (Doc. 38) in which he supported the allegations of his complaint with testimony, under penalty of perjury, that Plaintiff suffers from chronic pain and Dr. Fuller has refused to provide him medication or allow orthopedic shoes despite the opinion of an outside specialist that Plaintiff should receive such treatment. Plaintiff complains that Dr. Fuller has not explained his decision to

ignore the alleged recommendation of the outside consultant.

The result on this motion might be different had Dr. Fuller responded with a more informative affidavit about the reasons he treated Plaintiff as he did and how he assessed the outside consultant's advice. His conclusory affidavit was enough to shift the summary judgment burden, but Plaintiff's competing evidence of a lack of needed care went largely unexplained and that must control for summary judgment purposes. Plaintiff has presented facts that show Dr. Fuller disregarded, without explanation, the recommendations of an outside specialist, which left Plaintiff suffering from serious pain over the course of several months and even years. If credited by a jury, Plaintiff could prevail on an Eighth Amendment claim under his set of facts.

**E. Supervisory Officials**

Warden Goodwin testifies that he was unaware of Plaintiff being denied medical care, and he defers to the prison medical staff for appropriate medical evaluation and treatment. Plaintiff generally complains that the warden should have done more to help him, but supervisory officials are entitled to defer to the judgment of medical professionals. See, e.g., Vasquez v. Dretke, 226 Fed. Appx. 338 (5th Cir. 2007) (warden and director of clinical services "were not deliberately indifferent" when "they deferred to the judgment of medical professionals by denying [a prisoner] dentures"); Garza v. Chaney, 2007 WL 4367882, *6 (S.D. Tex. 2007) ("it was reasonable for Assistant Warden Mundy to rely on the medical department to handle the medical needs of the inmates"); and Jones v. Livingston, 2005 WL

3618316, *3 (S.D. Tex. 2005) ("it would be reasonable for Warden Morales to refer the matter to, and rely on, the medical decisions of Dr. Herrera").

Plaintiff complains that the other officials, ranging from Paula Millwee and Angie Huff who prepared the first-step grievance response, to Secretary LeBlanc, are liable for not adequately addressing his grievances. An inmate does not have a protected liberty interest in having a grievance resolved to his satisfaction. Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005). Plaintiff has not created a genuine dispute as to whether any of the administrative or supervisory officials were deliberately indifferent to his serious medical need by way of their investigation into his complaints and preparation of a written response that relied upon the input of medical professionals. All of the supervisory defendants are entitled to summary judgment.

**Preliminary Injunction**

Plaintiff filed a motion (Doc. 23) in which he asked that the court immediately order that he receive necessary medical care, including the prescription medication he desires and a transfer to another DOC facility. To obtain the relief he seeks, Plaintiff would have to show (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury absent an injunction, (3) that the threatened injury would exceed any harm that would flow from the injunction, and (4) that the injunction would not undermine the public interest. Walgreen Co. v. Hood, 275 F.3d 475, 477 (5th Cir. 2001).

There are obviously substantial conflicts in the evidence, and inmates seldom prevail

at trial on claims of this nature given the heavy burden under Estelle, so Plaintiff has not shown a substantial likelihood of success on the merits. Furthermore, the court intends to move forward with this case so that the merits will be resolved, by trial or otherwise, in the near future. The request for immediate injunctive relief should be denied.

Accordingly,

**IT IS RECOMMENDED** that the **Motion for Summary Judgment by Defendants (Doc. 25)** be **granted in part** and **denied in part** by dismissing all Defendants except Dr. Bruce Fuller.

**IT IS FURTHER RECOMMENDED** that Plaintiff's **Motion for TRO or Preliminary Injunction (Doc. 23)** be **denied**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 23rd day of April, 2015.

_____
Mark L. Hornsby
U.S. Magistrate Judge